ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Wednesday, November 2, 2022 12:45:17 PM
CASE NUMBER: 2022 CV 04989 Docket ID: 345992232
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

# IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO

## CIVIL DIVISION

| | | |
|---|---|---|
| **FREDRIC L. SINDER, Executor of the Estate of Paulyne S. Holten-Sinder, deceased** | : | |
| 2511 Oakmoor Lane | : | **CASE NO.** |
| Dayton, Ohio 45459 | : | |
| Plaintiff, | : | **JUDGE:** |
| vs. | : | |
| **MONSANTO COMPANY** | : | **COMPLAINT FOR** |
| c/o Corporation Service Company | : | **WRONGFUL DEATH** |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, Ohio 43221 | : | **JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| -and- | : | |
| **BAYER CORPORATION** | : | |
| c/o Corporation Service Company | : | |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, Ohio 43221 | : | |
| Defendants. | : | |

1. This is a suit for wrongful death based on: (I) products liability, including a failure to warn; (II) breach of express and implied warranties of safety and fitness for its intended use; (III) negligence; including negligent misrepresentation, and (IV) fraud regarding product safety.

2. Paulyne S. Holten-Sinder ("Paulyne") was diagnosed in October 2020 with stage IV non-Hodgkin lymphoma. Initial symptoms from the cancer appeared very suddenly a few

months before the diagnosis was made, the cancer was very aggressive, and she died from it on November 2, 2020. Paulyne was 78 years old at the time of her death.

3. In 1970, Defendant Monsanto Company discovered the herbicidal properties of glyphosate and began marketing it in products in 1974 under the brand name Roundup® ("Roundup").

4. Defendant Monsanto Company was wholly acquired by defendant Bayer Corporation in 2018. Defendants are jointly referred to as "Monsanto" from this point forward.

5. Paulyne began using Roundup herbicide yearly, at least as early as 2002, to control weeds and other unwanted plants at her home at 2511 Oakmoor Lane, Dayton, Ohio 45459.

6. At all times, Paulyne followed the instructions on the Roundup packaging for its use.

7. Roundup, in all its various formulations, is a non-selective herbicide spray used to kill weeds that commonly grow with crops and other plants. The active ingredient in Roundup is glyphosate, now the world's most used herbicide.

8. Monsanto produces more glyphosate than any other company in the world.

9. There have been at least 100,000 lawsuits filed against Monsanto regarding Roundup, such that a detailed description of all the allegations made against it would be merely a cut-and-paste of allegations well familiar to Monsanto and its attorneys. Thus, only general allegations are made here, well sufficient to put Monsanto on notice of the bases for this complaint. Plaintiff heartily thanks all those attorneys who have gone before and the

substantial work they put into their complaints, particularly for the edited cuts-and-pastes from those complaints made here.

10. Example other lawsuits against Monsanto include: *Kuhn v. Monsanto et al.*, Case No. 4:22CV171-SA-DAS, U.S. District Court for the Northern District of Mississippi, Greenville Division; *Bakri El-Hakam et al. v. Monsanto et al.*, Case No. 4:21-cv-03917, U,S. District Court for the Southern District of Texas, Houston Division; *Torvik v. Monsanto*, Case No. 19-CV-6313, U.S. District Court for the Northern District of Illinois; *Holm v. Monsanto*, Case No. 1:17-cv-00056, U.S. District Court for the District of Colorado; and, *Hardeman v. Monsanto et al.*, Case No. 4:16-cv-00525-VC, U.S. District Court for the Northern District of California; all of which allegations related to Monsanto's actions are fully incorporated by reference into this complaint. Those allegations, and the allegations repeated in this complaint, several multiple times as appropriate, apply generally to all the following bases for this action and are, as appropriate, incorporated by reference into the description of other bases.

### (I) PRODUCTS LIABILITY, INCLUDING A FAILURE TO WARN

11. Roundup is inherently dangerous in that it can cause non-Hodgkin lymphoma when used as directed. While that statement is highly contested, juries have been permitted to make such a finding, and have made such findings, particularly in relation to Monsanto's failure to warn of known dangers and its efforts to hide notice of those possible dangers from use of Roundup.

12. Monsanto provided inadequate post-marketing warnings and instructions, performed inadequate testing and studies, and provided inadequate reporting regarding the results of those tests and studies.

13. Monsanto has been engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, promoting and applying Roundup products, which products are defective and unreasonably dangerous to consumers because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup, specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Monsanto.

14. Monsanto had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that its Roundup products did not cause users and consumers to suffer from unreasonable and dangerous risks. Monsanto had a continuing duty to warn users of the dangers associated with Roundup use and exposure. Monsanto, as manufacturer, seller, or distributor of chemical herbicides is held to the knowledge of an expert in the field.

15. At the time of manufacture, Monsanto could have provided the warnings or instructions regarding the full and complete risks of Roundup and glyphosate-based formulations because they knew or should have known of the unreasonable risks of harm associated with the use of and exposure to such products.

16. Monsanto failed to, or deliberately or negligently failed to, adequately investigate, study, test, or minimize the dangers to users and consumers of Roundupt and to those who would foreseeably use or be harmed by it.

17. Monsanto failed to warn of the dangerous risks associated with use and exposure, and the dangerous propensities of its products and the carcinogenic characteristics of glyphosate. Those risk, as alleged in this complaint, were known to Monsanto, or scientifically knowable to Monsanto through appropriate research and testing by known methods, at the time it distributed, supplied and sold the product, and not known to end users and consumers.

18. Monsanto knew or should have known that these products created significant risks of serious bodily harm to consumers, as alleged in this complaint, and Monsanto failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to its products. Monsanto wrongfully concealed information concerning the dangerous nature of Roundup and its active ingredient glyphosate, and further made false and misleading statements concerning the safety of Roundup and glyphosate.

### (II) BREACH OF EXPRESS AND IMPLIED WARRANTIES OF SAFETY AND FITNESS FOR ITS INTENDED USE

19. Monsanto has breached both its express and implied warranties. Monsanto represented and warranted to Paulyne that its Roundup products were safe for use in accordance with Monsanto's protocols. Those representations were in the form of marketing materials, product information and product materials provided to Paulyne and the public. Paulyne justifiably relied on those representations and express warranties in electing to use Roundup.

20. Roundup did not conform to Monsanto's representations and warranties.

21. Roundup did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

22. Roundup did not perform in accordance with Monsanto's representations.

23. Roundup was not fit for the ordinary purpose for which such goods were used. It was unmerchantable when used as directed and defective in design. Monsanto's failure to provide adequate warnings and instructions also resulted in it being unreasonably dangerous. Roundup was dangerous to an extent beyond the expectations of ordinary consumers with common knowledge of its characteristics, including Paulyne.

24. Monsanto provided inadequate post-marketing warnings and instructions, performed inadequate testing and studies, and provided inadequate reporting regarding the results of those tests and studies.

25. Monsanto has, over decades, continuously expressed the safely of Roundup and its fitness for use, despite substantial and numerous questions over its safety.

(III) NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

26. Monsanto has, over decades, continuously expressed the safely of Roundup and its fitness for use, despite substantial and numerous questions over its safety. Despite that Monsanto knew or should have known that Roundup posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of its products and the carcinogenic characteristics of glyphosate were known to Monsanto, or scientifically knowable to Monsanto through appropriate

research and testing by known methods, at the time it distributed, supplied or sold Roundup, and not known to end users and consumers, such as Plaintiff.

27. Monsanto knew or should have known that Roundup created significant risks of serious bodily harm to consumers, as alleged in this complaint, and Monsanto failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to its products. Monsanto wrongfully concealed information concerning the dangerous nature of Roundup and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup and glyphosate.

28. Monsanto disseminated information that was inaccurate, false and misleading, and which failed to communicate accurately or adequately the comparative severity, duration and extent of the risk of injuries with use of and/or exposure to Roundup and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup and glyphosate.

29. Monsanto provided inadequate post-marketing warnings and instructions, performed inadequate testing and studies, and provided inadequate reporting regarding the results of those tests and studies.

30. Monsanto's Roundup products reached the intended consumers, handlers, users and other persons coming into contact with those products, including Paulyne, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Monsanto.

## (VI) FRAUD REGARDING PRODUCT SAFETY

31. Plaintiff is informed and believes that Monsanto did design, sell, advertise, manufacture and distribute Roundup with full knowledge of its dangerous and defective nature.

32. For example, on two occasions, the EPA found that laboratories hired by Monsanto to test the toxicity of its Roundup products for registration purposes committed fraud.

33. Monsanto's advertisements regarding Roundup made material misrepresentations to the effect that Roundup was safe, which misrepresentations Monsanto knew or should have known to be false, for the purpose of fraudulently inducing consumers, such as Paul;yne, to purchase Roundup. Monsanto misrepresented that Roundup was just as safe, and just as effective or more effective, than other weed control products on the market.

## COMMENTS

34. Plaintiff brings this action because of a statute of limitations. Plaintiff spouse and the next of kin do not need monetary compensation, but deeply feel the loss from Paulyne's possibly wrongful death, regardless of her then age, having reasonably expected, based on her long-lived family history, her companionship for many, many more years.

35. Plaintiff spouse, as an attorney and having some knowledge on the subject, had hoped that in the two years following Paulyne's death, more reliable information regarding the incidence of non-Hodgkin lymphoma from routine yearly residential use would have been revealed. Unfortunately, the status of reliable information is no better now than it was almost two years ago, and that doesn't include a possible increased risk to those possibly

having an increased risk for cancer, very possibly including Paulyne, a possible variation on the eggshell skull doctrine, which directly goes to Monsanto's deliberate failure to warn. Further, from all our recent experience with COVID-19, we have a much greater appreciation for strictly limiting, for example, contact with the immunocompromised and the elderly with co-morbidities. Again, the issue of failure to warn.

36.  Plaintiff spouse doubts he would have initiated this action if it were just him. He also, however, represents the interests of the next of kin, his two stepsons. While they would have undoubtedly willingly left the decision up to him, he does not believe they would have fully and adequately weighed their own interests in making that decision.

37.  This action is filed with the intent of letting it take its own path; whether that includes removal to federal court and made part of Multidistrict Litigation, a local trial, or otherwise.

38.  Plaintiff plans to fully cooperate with defendants' attorneys to reduce the time taken up with and the costs of this action, not because this action is relatively small and can ride below the surface, so to speak, of other cases presenting arguably more major issues, but because, as suggested above, this case is less about monetary compensation than answers. It is also, of course, about compensation in that compensation paid to the next of kin, even if not needed by them, is both symbolic and will comfort both the next of kin and their children.

CLAIM AND PRAYER FOR RELIEF<br><u>Wrongful Death</u>

39.  Plaintiff, as Executor of the Estate of Paulyne S. Holten-Sinder, brings this wrongful death action on his and the behalf of the next of kin by virtue of Ohio Revised Code

§ 2125.01, et. seq., thus entitled to all the claims and benefits under those code sections, including but not limited to, mental anguish suffered due to Paulyne's death, loss of services, loss of society, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance and counsel suffered by him as the spouse and the next of kin of decedent.

WHEREFORE, plaintiff demands judgment against Defendants, jointly and severally, in an amount in excess of $25,000.00 for compensatory damages, plus such other and further relief as is just.

Respectfully submitted,

/s/ Fredric L. Sinder
Fredric L. Sinder (0023710)
2511 Oakmoor Lane
Dayton, Ohio 45459
(937) 361-7007 (telephone)
(973) 302-8586 (facsimile)
fred@sinder.us (email)

Attorney for Plaintiff Fredric L. Sinder, Executor

JURY DEMAND

Plaintiff hereby requests a trial by jury.

/s/ Fredric L. Sinder
Fredric L. Sinder (0023710)

REQUEST FOR SERVICE

TO THE CLERK OF COURTS:

Please serve a copy of this Complaint for Wrongful Death and its accompanying Summons on each Defendant in accordance with the Ohio Rules of Civil Procedure and Local Rules, at the addresses listed in the caption of the complaint.

/s/ Fredric L. Sinder
Fredric L. Sinder (0023710)